Filed 12/16/25  P. v. Ascencion CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>          v.<br><br>ALEXIS ASCENCION,<br><br>    Defendant and Appellant. | G064057<br><br>(Super. Ct. No. 17CF3252)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge. Affirmed and remanded with directions.

Jason L. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Robin H. Urbanski and Christopher P. Beesley, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted defendant Alexis Ascencion of, among other things, the special circumstance murder of Mariano Labra. On appeal, Ascencion asks that we review the outcome of an in camera proceeding conducted by the trial court without defense counsel present, to determine whether his federal constitutional and state statutory rights to discovery were violated. We have done so and conclude they were not. In addition, Ascencion and the Attorney General largely agree that certain errors in the minutes and abstract of judgment must be corrected. We conclude the minutes from April 22, 2024, and the abstract of judgment need to be corrected as detailed below. We disagree, however, with Ascencion's argument that the parole revocation fine under Penal Code section 1202.45, subdivision (a), should be stricken.[1] The matter is remanded to the trial court with directions to prepare and file amended minutes from April 22, 2024, and an amended abstract of judgment consistent with this opinion. In all other respects, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 2017, Labra was outside, near some apartments on West Myrtle Street in Santa Ana, when he was shot twice in his leg. He was transported to the hospital, where he was pronounced dead. Police subsequently identified a silver four-door sedan that was seen leaving the scene. Later that night, police pulled over the car and took into custody the driver, F.V., and three additional occupants. F.V. eventually told the police Ascencion was the shooter.

Asencion was charged with one count of murder in violation of section 187, subdivision (a) (count 1), and one count of street terrorism in

---

[1] All undesignated statutory references are to the Penal Code.

2

violation of section 186.22, subdivision (a) (count 2). As to count 1, the information further alleged a special circumstance for a gang related murder under section 190.2, subdivision (a)(22). It also alleged, as to count 1, the murder came within the meaning of section 186.22, subdivision (b)(4) and Ascencion committed the "offense for the benefit of, at the direction of, and in association with" the Townsend Street gang, and "with the specific intent to promote, further, and assist in criminal conduct by members of that gang." The information also alleged, as to count 1, an enhancement under section 12022.53, subdivision (d) for personally discharging a firearm proximately causing death.

Following a mistrial in 2022, the case proceeded to a bifurcated jury trial in 2024, with the murder charge (count 1) and the firearm enhancement under section 12022.53, subdivision (d) tried first, followed by trial of the street terrorism charge (count 2) and, as to count 1, the special circumstance allegation under section 190.2, subdivision (a)(22), and the allegation under section 186.22, subdivision (b).

Many witnesses testified at the first trial. Among other witnesses, Labra's friend testified he was with Labra near the apartments on West Myrtle Street at the time of the shooting. He heard a boom and then a second boom that he knew was a gunshot, and he and Labra ran. Labra complained about his leg, and the friend put a belt around Labra's leg to try to stop the bleeding. The friend thought the gunshots came from the street, but he was not able to see the shooter. He testified neither he nor Labra was a member of a gang in Santa Ana.

A police officer testified the Townsend Street gang's territory is primarily around Townsend Street in Santa Ana, and that one of its primary rivals is the West Myrtle Street gang, whose members the Townsend Street

3

gang call turtles or tortugas. A different police officer testified to an interaction he had with Ascencion in 2015, during which Ascencion said he was a member of the Townsend Street Gang and the West Myrtle Street gang was a rival gang.

F.V. testified to the following: He picked up his friend M.V. on December 1, 2017, and the two drove around in F.V.'s car together. They made various stops during the day, at times picking up and driving additional people. At one point, when M.V., E.M., and Ascencion were all in F.V.'s car,[2] E.M. asked F.V. to "'take a spin towards turtles.'" In response, F.V. drove towards West Myrtle Street. Ascencion then told F.V. to make a U-turn because he had seen someone. F.V. made the turn, and Ascencion told him to stop the car. Ascencion then got out of the car with a gun in his hand and ran toward the back of the car.[3] F.V. could not see where Ascencion went, but he heard two gunshots from behind his car, and Ascencion then ran back to the car and got in with the gun still in his hand. Ascencion was gone for probably only a few seconds. E.M asked Ascencion: "'Did you hit him?'" Ascencion responded, "why was he tripping," but F.V. said Ascencion looked

---

[2] F.V. testified he knew E.M. was a member of the Townsend Street gang, who used to go by the moniker "Trigger," and that he had seen E.M. with a gun earlier in the day. F.V. also stated Ascencion used to go by the name "Riot."

[3] F.V. testified he had seen a gun earlier in the day between Ascencion's legs.

scared and was stuttering. F.V. then drove back to Townsend Street and dropped off E.M. and Ascencion.[4]

The jury convicted Ascencion on count 1 of first degree murder. It also found true the enhancement that Ascencion intentionally and personally discharged a firearm proximately causing death to Labra under section 12022.53, subdivision (d).

The trial court then proceeded with the second portion of the trial. Following additional testimony and argument, the jury found Ascencion guilty on count 2 of violating section 186.22, subd. (a). As to count 1, the jury found true the special circumstance allegation under section 190.2, subdivision (a)(22) and found true the allegation of criminal street gang activity in violation of section 186.22, subdivision (b).

Given the special circumstance finding under section 190.2, subdivision (a)(22), the trial court sentenced Ascencion to life without the possibility of parole on count 1. It imposed an additional term of 25 years to life for the firearm enhancement under section 12022.53, subdivision (d). Regarding the section 186.22, subdivision (b), allegation as to count 1, the court said it "will impose the minimum on that of 15 years to life, but that is merged, and therefore, stayed pursuant to . . . [s]ection 654." The court imposed the midterm of two years on count 2, which it also stayed under section 654.

---

[4] During his testimony, F.V. admitted he lied about what happened when he initially spoke with the police. He also testified about his plea agreement.

DISCUSSION

I.

THE TRIAL COURT'S IN CAMERA REVIEW

*A. Additional Background*

In its June 2022 trial brief, the prosecutor asked the trial court to conduct an in camera ex parte review pursuant to Evidence Code sections 1040 to 1042 and Penal Code section 1054.7.[5] After noting the defense had not moved to compel production of purportedly privileged discovery material, the court asked the prosecution if it requested the in camera hearing because it believed there was information it was required to disclose under section 1054.1 but was seeking relief from disclosure under section 1054.7. The prosecutor responded affirmatively. The court began to conduct an ex parte in camera hearing later that day (i.e., without defense counsel present), but

---

[5] As discussed further below, Penal Code section 1054.1 specifies the information the prosecutor must disclose to the defense in discovery. Penal Code section 1054.7 sets the deadline for such disclosures, but also establishes a procedure whereby the prosecution may ask the court to deny, restrict or defer disclosures for good cause shown. The procedure includes a potential in camera review by the court, with a verbatim record, which shall be sealed and "made available to an appellate court in the event of an appeal or writ." (*Ibid.*) Evidence Code section 1040 creates a privilege for a public entity to refuse to disclose under certain circumstances "'official information,'" which is "information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made." (*Id.*, subd. (a).) Evidence Code section 1041 creates a privilege for a public entity to refuse to disclose under certain circumstances the identity of an informer, and Evidence Code section 1042 articulates certain consequences for invoking such privileges in a criminal proceeding. Evidence Code section 1042 also establishes certain procedures, including a potential in camera hearing. (*Id.*, subd. (d).)

made no definitive ruling and ultimately continued the hearing to June 27, 2022.

The trial court's minutes reflect that, at the continued ex parte in camera hearing on June 27, 2022, the court conducted an in camera hearing "regarding a [section] 1040 invocation" and "sustained the privilege, no disclosure will be made." Our independent review of the reporter's transcript of the in camera proceeding shows the court stated it sustained the privilege, and also noted the information was not relevant and the defense was not being deprived of *Brady* material.[6] The minutes also indicate the court ordered court exhibits A1, A2, B1, and B2 to be placed under seal.

In another trial brief filed in January 2024, the prosecution noted it had previously brought section 1054.7 information to the trial court's attention. The prosecution represented there was "currently no change in circumstances related to this issue" and "request[ed] any further proceedings on this issue be conducted in camera and ex parte pursuant to" section 1054.7. The record does not reflect further in camera proceedings were conducted regarding this issue.

*B. Analysis*

Ascencion requests that we independently review the in camera proceedings on June 22 and 27, 2022, to determine whether his federal constitutional and state statutory rights to discovery were violated by nondisclosure of the material addressed in the in camera review. The Attorney General does not object to this request.

Under *Brady*, "a criminal defendant has a federal due process right to pretrial discovery of material information favorable to his defense."

---

[6] *Brady v. Maryland* (1963) 373 U.S. 83 (*Brady*).

7

(*People v. Deleoz* (2022) 80 Cal.App.5th 642, 655–656 (*Deleoz*).) "The government's duty of disclosure encompasses both 'exculpatory evidence that casts doubt on the defendant's guilt and impeaching evidence that calls into question the credibility of government witnesses.' [Citations.] Evidence is material within the definition ascribed by the Supreme Court "'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."'" (*Deleoz*, at p. 656.) "The United States Supreme Court has identified three components of a *Brady* violation: (1) the evidence at issue must be favorable to the accused because it is exculpatory or impeaching; (2) the evidence must have been suppressed by the state, either willfully or inadvertently; and (3) the defendant must have been prejudiced by the nondisclosure. [Citation.] 'Prejudice' in the context of a potential *Brady* violation turns 'on "the materiality of the evidence to the issue of guilt [and] innocence."'" (*Ibid.*)

"In addition to the disclosure requirements arising under the federal due process clause, California's reciprocal discovery statute "'independently requires the prosecution to disclose to the defense . . . certain categories of evidence 'in the possession of the prosecuting attorney or [known by] the prosecuting attorney . . . to be in the possession of the investigating agencies.'"'" (*Deleoz, supra*, 80 Cal.App.5th at p. 657; see

§ 1054.1.)[7] Under section 1054.7, the required disclosure must "be made at least 30 days prior to the trial, unless good cause is shown why a disclosure should be denied, restricted, or deferred." "'Good cause' is limited to threats or possible danger to the safety of a victim or witness, possible loss or destruction of evidence, or possible compromise of other investigations by law enforcement." (*Ibid.*) Section 1054.7 also provides a procedure for in camera review.[8] "A violation of the reciprocal discovery obligations constitutes reversible error only where it is reasonably probable, by state law standards, that the omission affected the trial result." (*Deleoz, supra*, 80 Cal.App.5th at p. 658.)

"We generally review a trial court's ruling on matters regarding discovery under an abuse of discretion standard." (*People v. Ayala* (2000) 23 Cal.4th 225, 299; see also *Deleoz, supra*, 80 Cal.App.5th at p. 658.) "[W]e

---

[7] Section 1054.1 provides the following: "The prosecuting attorney shall disclose to the defendant or his or her attorney all of the following materials and information, if it is in the possession of the prosecuting attorney or if the prosecuting attorney knows it to be in the possession of the investigating agencies: [¶] (a) The names and addresses of persons the prosecutor intends to call as witnesses at trial. [¶] (b) Statements of all defendants. [¶] (c) All relevant real evidence seized or obtained as a part of the investigation of the offenses charged. [¶] (d) The existence of a felony conviction of any material witness whose credibility is likely to be critical to the outcome of the trial. [¶] (e) Any exculpatory evidence. [¶] (f) Relevant written or recorded statements of witnesses or reports of the statements of witnesses whom the prosecutor intends to call at the trial, including any reports or statements of experts made in conjunction with the case, including the results of physical or mental examinations, scientific tests, experiments, or comparisons which the prosecutor intends to offer in evidence at the trial."

[8] As discussed above, Evidence Code sections 1040 to 1042 also address certain privileges, including a privilege for official information and a privilege for the identity of an informer, as well as a procedure for in camera review.

independently review whether a *Brady* violation occurred, giving great weight to the trial court's findings of fact if they are supported by substantial evidence." (*Deleoz*, at pp. 656–657.)

We have independently reviewed the sealed transcripts of the in camera hearings on June 22 and 27, 2022, as well as the sealed exhibits. We conclude the prosecution was not required to disclose the information identified by the prosecution at the in camera hearings under either *Brady* or section 1054.1, and there was no violation of Ascencion's due process or discovery rights.

II.

SECTION 186.22, SUBDIVISION (B)

*A. Additional Background*

During the second phase of trial, the jury was given CALCRIM No. 1401 regarding whether Ascencion committed the murder for the benefit of, at the direction of, or in association with a criminal street gang. The jury found true the allegation of criminal street gang activity in violation of section 186.22, subdivision (b).[9]

At sentencing, the trial court stated it believed section 654 required the finding under section 186.22, subdivision (b), to be merged with the special circumstance finding on count 1. The court asked the prosecutor and defense counsel if they agreed, and both of them did. The court then stated it "will impose the minimum on that of 15 years to life, but that is merged, and therefore, stayed pursuant to . . . [s]ection 654." The minutes from April 22, 2024, state the court imposed a sentence of 15 years to life

---

[9] The information alleged the murder came within the meaning of section 186.22, subdivision (b)(4).

10

under section 186.22, subdivision (b)(4), and stayed the sentence under section 654.

*B. Analysis*

"Except as provided in paragraphs (4) and (5)," section 186.22, subdivision (b)(1), provides certain additional punishments for "a person who is convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members." Under section 186.22, subdivision (b)(4), such a defendant who is convicted of a felony specifically enumerated in paragraph (4) shall be sentenced to an indeterminate term of life imprisonment, and that paragraph also describes how to calculate the minimum term of the indeterminate sentence. Notably, murder is not one of the enumerated felonies listed in section 186.22, subdivision (b)(4). Additionally, section 186.22, subdivision (b)(5), provides "[e]xcept as provided in paragraph (4), a person who violates this subdivision in the commission of a felony punishable by imprisonment in the state prison for life shall not be paroled until a minimum of 15 calendar years have been served."

Ascencion argues that because he was convicted of first degree murder, subdivision (b)(5)—not subdivision (b)(4) or (b)(1)—of section 186.22 applies. Ascencion contends the trial court's comments at the sentencing hearing were ambiguous because it did not specify what paragraph of section 186.22, subdivision (b) it was applying. According to Ascencion, the court did *not* err if it was attempting to impose a minimum parole term of 15 years on the sentence of life without the possibility of parole under section 186.22, subdivision (b)(5), but it *did* err if it was attempting to impose a separate enhancement of 15 years to life on count 1. Moreover, Ascencion argues the

11

minutes must be corrected because they erroneously refer to a true finding under section 186.22, subdivision (b)(4), and a sentence of 15 years to life.

The Attorney General agrees the minutes contain an error that we should correct. The Attorney General agrees section 186.22, subdivision (b)(5), is the applicable paragraph, not paragraph (4). The Attorney General further asserts that, although the minutes are in error, the trial court's oral pronouncement does not appear to be in error because it appears the court was invoking the 15 year minimum parole eligibility of section 186.22, subdivision (b)(5), which specifies a minimum parole eligibility of 15 years.

We agree with the parties the minutes from April 22, 2024, are in error. We understand the trial court's oral pronouncement as stating that, as to the true finding regarding criminal street gang activity under section 186.22, subdivision (b), the 15-year minimum parole eligibility period under section 186.22, subdivision (b)(5) applied, which the court stayed under section 654. The minutes from April 22, 2024, must be corrected to reflect that. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [recognizing "[c]ourts may correct clerical errors at any time"].)

### III.

### PAROLE REVOCATION FINE

Under section 1202.45, subdivision (a), "[i]n every case where a person is convicted of a crime and his or her sentence includes a period of parole, the court shall, at the time of imposing the restitution fine pursuant to subdivision (b) of [s]ection 1202.4, assess an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of [s]ection 1202.4." At Ascencion's sentencing, the trial court stated: "In the event that parole is granted to the defendant, the [c]ourt will impose the $300 revocation fine. That is stayed pending successful completion of parole

12

in the event that will occur." The minutes from April 22, 2024, indicate the court imposed a $300 fine under section 1202.45 that is "suspended unless parole / postrelease community supervision is revoked." The abstract of judgment similarly shows a $300 fee under section 1202.45 that is suspended unless parole is revoked.

Ascencion argues the trial court erred in imposing a $300 parole revocation fine under section 1202.45 because he was sentenced to life without the possibility of parole. The Attorney General agrees with Ascencion, but we do not.

Ascencion and the Attorney General both cite *People v. Oganesyan* (1999) 70 Cal.App.4th 1178 (*Oganesyan*). In that case, the defendant received a sentence of life without the possibility of parole on one count (plus an additional 10-year term for firearm use) and an indeterminate sentence of 15 years to life on a different count (plus an additional four-year term for firearm use). (*Id.* at pp. 1181, 1184.) *Oganesyan* concluded the trial court correctly did not apply a parole revocation fine under section 1202.45. (*Id.* at pp. 1183–1186.)

In *People v. Brasure* (2008) 42 Cal.4th 1037 (*Brasure*), however, the California Supreme Court concluded a parole revocation fine could be imposed and suspended where the defendant was sentenced to determinate prison terms in addition to being sentenced to death. (*Id.* at p. 1075.) The Court reasoned the defendant was sentenced "to a determinate prison term under section 1170. Section 3000, subdivision (a)(1) provides that such a term 'shall include a period of parole.' Section 1202.45, in turn, requires assessment of a parole revocation restitution fine '[i]n every case where a person is convicted of a crime and whose sentence includes a period of parole.' The fine was therefore required, though by statute and the court's order it

13

was suspended unless and until defendant was released on parole and his parole was revoked." (*Ibid.*) Notably, *Brasure* distinguished *Oganeysan* because *Oganeysan* did not involve a determinate term of imprisonment. (*Ibid.*) Our Supreme Court further explained the defendant in *Brasure* was "unlikely ever to serve any part of the parole period on his determinate sentence. Nonetheless, such a period was included in his determinate sentence by law and carried with it, also by law, a suspended parole revocation restitution fine. Defendant is in no way prejudiced by assessment of the fine, which will become payable only if he actually does begin serving a period of parole and his parole is revoked." (*Ibid.*)[10]

Here, although Ascencion was sentenced to life without the possibility of parole on count 1, he also was sentenced to a determinate term of two years on count 2, which was then stayed. Similar to *Brasure*, we conclude a suspended parole revocation fine was properly applied to the determinate term because it carried a parole period even if Ascencion "is unlikely ever to serve any part of the parole period on his determinate sentence." (*Brasure, supra*, 42 Cal.4th at p. 1075.)

The Attorney General, however, asserts this case is more analogous to *Oganesyan* than to *Brasure* because Ascencion's determinate

---

[10] Our Supreme Court recently reiterated the distinction between an indeterminate term with the possibility of parole and a determinate term for purposes of whether a parole revocation fine should be applied. (See *People v. Alvarez* (2025) 18 Cal.5th 387, 484–486 [striking a parole revocation fine where defendant was sentenced to death and a stayed indeterminate term of 25 years to life].) The Court explained it has "drawn this distinction because an indeterminate sentence only establishes a defendant's *eligibility for parole consideration at a later date*, but a determinate sentence *includes a parole period 'by law* and carried with it, also by law, a suspended parole revocation restitution fine.'" (*Id.* at p. 484.)

14

sentence was stayed. We are not persuaded that a stayed determinate term is more analogous to an indeterminate term with the possibility of parole for purposes of whether a parole revocation fine applies. The determinate term here was imposed, and although it was stayed, there is a possibility the stay could be lifted in the future. (See *People v. Rhodius* (2025) 17 Cal.5th 1050, 1061 ["when a sentence is stayed, the trial court retains the ability to 'lift the stay and impose the term under certain circumstance[s], such as if an alternately imposed term is invalidated'"].) The fact that the stay may make it less likely that Ascencion will ever serve any part of the parole period does not make *Brasure*'s reasoning inapplicable here. We find no error in the trial court's imposition (and suspension) of the $300 parole revocation fine.

IV.

CRIMINAL CONVICTION ASSESSMENT FEE

The transcript of the sentencing hearing reflects that the trial court orally imposed only a $40 court operation fee; it did not impose a criminal conviction assessment fee under Government Code section 70373.[11] The minutes from April 22, 2024, indicate the court imposed *both* a $40 court operation fee under Penal Code section 1465.8 and a "[c]riminal [c]onviction [a]ssessment [f]ee per convicted count of $30.00 per misdemeanor/felony and $35.00 per infraction pursuant to Government Code section 70373[, subdivision (a)(1)]." Consistent with the minutes, the abstract of judgment indicates the court imposed a $60 criminal conviction assessment fee under Government Code section 70373. In other words, both the minutes and the

---

[11] The trial court asked defense counsel to confirm that Ascencion does not have the means to pay the state restitution fund fee. Defense counsel agreed that was the case, and the prosecution stated it would submit. The court then imposed the minimum restitution fine of $300.

15

abstract reflect the imposition of a criminal conviction assessment fee that the trial court did not impose orally at sentencing.

Ascencion argues the oral pronouncement controls and the minutes and abstract of judgment must be corrected to strike the references to a criminal conviction assessment fee under Government Code section 70373. The Attorney General agrees, as do we, the reference to the criminal conviction assessment fee must be stricken from the minutes from April 22, 2024, and the abstract of judgment. (See *People v. Mitchell, supra*, 26 Cal.4th at p. 185.)

## DISPOSITION

The matter is remanded to the trial court with directions to prepare and file amended minutes from April 22, 2024, and an amended abstract of judgment consistent with this opinion. In all other respects, the judgment is affirmed.

GOODING, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

SANCHEZ, J.

16